### ROBERT KEITH V. THE STATE.

*No. 445. Decided May 9.*

Minor—Nonage—Doli Incapax—Statutory Law.—Where, in a prosecution for crime, it appears that the accused is under 13 years of age, our statute requires the State to prove, "that he had discretion sufficient to understand the nature and illegality of the act constituting the offense." Penal Code, art. 34. *Held*, that it is not sufficient that the accused knew the difference between good and evil, or that he was possessed of the intelligence of ordinary boys of his age; he must be shown to understand the nature and illegality of the particular act.

APPEAL from the District Court of Hood. Tried below before Hon. J. S. STRAUGHAN.

This appeal is from a conviction for burglary, with the punishment assessed at two years' imprisonment in the house of correction and reformatory, the jury having found by their verdict that appellant was under 16 years of age.

John G. Swafford testified: "I live in Granbury. I lived here about the 1st day of January, 1894. I know the defendant, Robert Keith, and I also know the boys Charles and Ern Rucker, who are indicted jointly with him in this case. I saw them in my barn, in Granbury, Texas, about the 1st of January, 1894, or the last of December, 1893; about that time I found them asleep in my barn one morning about 5 o'clock, before daylight. Some one had been sleeping in my barn. I was trying to catch them and find out who it was. They were asleep on some cotton seed in my barn. When I went in they woke up, and the defendant, Robert Keith, climbed up and scaled the wall like a lizard, and jumped out of the window and ran off. I caught the other two boys, Charles and Ern Rucker, before they could get out of the barn. I then rounded them up about sleeping in my barn, and let them go. After they had gone I found at their heads, where they were sleeping on the cotton seed, some can goods and crackers; the can goods had been opened. I found there two cans of potted ham, one can of salmon, one can of mustard sardines, and

about one and one-half pounds of crackers. The boys had done gone when I noticed these goods. I picked up the can goods and crackers, put them in a paper sack which I also found there, and took them down to town. When I got to the corner at the meat market the defendant and the other two boys were there. They wanted me to give them the goods, and said they were theirs, and wanted me to give them to them; and I told them I would not do it unless they told me where they got them. Lou Watts and Mr. Neely were present at the market when this conversation occurred. Defendant was not under arrest at the time of this conversation. After this conversation the Rucker negroes left, and I do not know where they went. I then asked Robert Keith, the defendant, where they got the goods I found, and he told me to come and go with him and he would show me where they got them. I went with him around behind, or in the rear of, Daniel & Bro.'s store, and he showed me and told me how they got the goods. He showed me, lying down by the window, a stick of timber. He said they (himself and the Rucker boys) pried up the bar of iron next to the window-sill with this stick of timber, and he (defendant) held the Rucker boys' coats while they crawled through between the window-sill and the iron bar, which was sprung up, and went into the house and got the goods which I then had. I noticed the stick of timber lying on the ground by the window, and I also noticed that the iron bar across the window next to the sill was sprung up considerably. The window had iron bars across it from top to bottom, and the sash was up the full length of the bottom sash. The window was six or seven feet long and about three feet wide. The iron bars across the window were four or five inches apart, and ran across the window parallel with the window-sill. Lou Watts was present and heard the defendant make these statements to me. When I first came down to town that morning with these can goods and crackers, which I found in my barn where I ran the negroes from, I went into Ferrell & Co.'s grocery store, before I saw the negroes, and had these conversations with them, to see if they had lost the goods I had found, and they had not, and did not have in their house such goods as these. After I had this talk with the defendant, and he had gone off, I then went to Daniels' store to see if they had lost the goods or had such goods in their house. We took the goods which I found and compared them with the goods which Daniel & Bro. had on their shelving, and found them to be the same kind and of the same brand. Also we found Daniel & Bro. had in their house the same kind of a paper sack which I found in my barn.''

This witness' testimony was corroborated fully by other witnesses.

Harriett Keith, mother of the defendant, testified: ''I am the mother of the defendant. I live in Granbury, Texas. The defendant was 12 years old the 15th day of last July. Will be 13 the

15th day of next July. On the night that Daniel & Bro.'s store was burglarized I sent defendant to town and he did not come back that night. I have taught defendant that it was wrong to steal. I belong to the church, and have always taught the defendant to do right. He has gone to school, and attends church. I don't know in what year the defendant was born. I know his age, because I have it set down in a book at home. It is not a Bible, but a book that you read out of. I can't read or write myself, but a man wrote down his age in this book for me." [After witness stated that defendant's age was set down in a book, the district attorney requested that she go and get the book, which she did, and the entry in the book showed that defendant was born on the 15th day of July, 1881.] She further stated, that the defendant was the dullest one of her children. "I did not tell the defendant in the presence of Sheriff Morris, in front of Daniel & Bro.'s store, the morning he was arrested, that he knew better than to do that."

No briefs with the record.

DAVIDSON, JUDGE.—Appellant was convicted of burglary, and awarded two years in the State reformatory.

Several matters are urged as causes for reversal. The appellant being under 13 years of age, it was incumbent on the State to prove, "that he had discretion sufficient to understand the nature and illegality of the act constituting the offense." Penal Code, art. 34. It is not sufficient that the accused knew the difference between good and evil, or that he was possessed of the intelligence of ordinary boys of his age. Parker v. The State, 20 Texas Crim. App., 451; Carr v. The State, 24 Texas Crim. App., 562. It must be shown that he had sufficient discretion to understand the nature and illegality of the particular act constituting the crime. Carr v. The State, 24 Texas Crim. App., 562. Appellant's confession was proved, in which he detailed the manner of entering the house through a window. When he was found sleeping in Swafford's barn, he ran, and escaped through a window. Swafford found some canned goods and crackers where appellant and the two Ruckers had slept, and carried them down on the street. Appellant, as soon as he saw Swafford with the goods, at once claimed them, and was refused possession unless he should tell where he obtained the goods, which he did at once. He also carried Swafford to the storehouse and explained to him how the Ruckers entered the house; stating also that he too would have entered, but couldn't pass between the iron bars fastened across the window. These facts explained the flight of appellant from the barn, on the theory that he was afraid of Swafford; and his voluntarily approaching Swafford and claiming the goods, afterwards, certainly does not show that he under-

stood the nature and illegality of the act of entering the store and taking the goods. His mother testified: "I taught him it was wrong to steal. I belong to the church, and have always taught the defendant to do right. He has gone to school, and attends church. * * *" She further stated that defendant was the dullest of her children. We do not think the evidence supports the verdict. It should be shown that the accused has sufficient discretion to understand the nature and illegality of the crime for which he was convicted, or with which he is charged, as required by the statute.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.